## STATE OF CONNECTICUT *v.* DANNY BEVERLY
### (AC 22199)

Flynn, Bishop and Daly, Js.[1]

---

[1] This appeal was argued before a panel comprised of Judges Flynn, Bishop and Daly. Although Judge Daly agreed with the other judges regarding the

Argued April 26—officially released September 3, 2002

resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that they would not reargue the appeal to this court with a panel consisting of the original two judges and an additional judge. Rather, the parties stipulated that they would permit the remaining two judges alone to render a written decision.

*Tara L. Knight*, special public defender, with whom were *Glenn M. Conway* and *Gregory Cerritelli*, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David J. Strollo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Danny Beverly, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a,[2] assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35.[3] On appeal, the defendant claims that (1) he was deprived of his constitutional right to a fair trial as a result of prosecutorial misconduct, (2) the court's consciousness of guilt instruction invaded the fact-finding province of the jury, (3) we should exercise our supervisory powers to abolish the consciousness of guilt instruction and (4) applying the five year sentence enhancement under General Statutes § 53-202k to the sentence he

---

[2] The defendant initially was charged with murder in violation of General Statutes § 53a-54a. The jury acquitted him of the murder charge and found him guilty of manslaughter in the first degree with a firearm as a lesser offense included within the crime of murder.

[3] The defendant was acquitted of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (1).

received for manslaughter in the first degree with a firearm violates the constitutional prohibition against double jeopardy. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Shortly after 1 p.m. on November 26, 1996, a vehicle driven by Gino Bryant turned onto Rosette Street in New Haven. The defendant was sitting in the backseat of the vehicle. Congregated in front of 154 Rosette Street were Roosevelt Green, Tyrell Blackwell and Sterling Cole. Upon seeing the group, Bryant stopped the vehicle in front of the house and motioned for Cole to come to the driver's side window. Bryant and Cole engaged in a short conversation during which Bryant stated, "I'm about to kill somebody." After the conversation, Bryant drove the vehicle a short distance and stopped again. The defendant exited the backseat with a firearm, walked past Cole and fired the gun three or four times at Green. The defendant then ran back to the waiting vehicle and drove away.

Two police officers were in the area and immediately arrived at the scene, where they saw two victims. Blackwell had been shot in the back, and Green had been shot in the arm. Blackwell died from his injuries the following day, and Green suffered an injury to his hand. Prior to being transported to a hospital, Green told a police officer that "Danny shot me," and that [the defendant] had driven away in a blue, four door Buick Park Avenue that had tinted windows, a damaged front end and a partial license plate number that included "696." Further, Green told Willie Nelson, who resided at 154 Rosette Street, that "Danny and Gino" had shot him. Several days later, the police located the vehicle that had been used in the shootings, a blue, four door Buick Park Avenue that had tinted windows, a damaged front end and the license plate number 696-KGU. The

vehicle was parked behind Bryant's grandmother's house.

The defendant was arrested on December 4, 1996, eight days after the shootings, by members of the Connecticut fugitive task force. The jury convicted the defendant of manslaughter in the first degree with a firearm, assault in the first degree and carrying a pistol or revolver without a permit. Thereafter, the court found that the defendant had used a firearm in the commission of a class B felony in violation of § 53-202k and enhanced his sentence accordingly.[4] The defendant received a total effective sentence of fifty years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that he was deprived of his constitutional right to a fair trial as a result of "a pervasive pattern of egregious misconduct by the prosecuting attorney." We disagree.

The defendant raises four instances of alleged misconduct by the prosecutor that he claims deprived him of a fair trial. The defendant concedes that he failed to preserve three of the claims properly at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. Practice Book § 60-5.

We will review the defendant's claims under *Golding* because the record is adequate to do so, and an allegation of prosecutorial misconduct in violation of a fundamental right is of constitutional magnitude. *State* v. *Yusuf*, 70 Conn. App. 594, 622, 800 A.2d 590 (2002). We conclude, however, that the challenged questioning and

---

[4] The defendant elected a trial to the court on part B of the information, which charged him with having used a firearm in the commission of a class A, B or C felony in violation of § 53-202k.

comments did not deprive the defendant of a fair trial and, therefore, that his claims fail under the third prong of *Golding*.

"The standard of review for a claim of prosecutorial misconduct is well established. [T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Stevenson*, 70 Conn. App. 29, 33, 797 A.2d 1 (2002).

"In order to determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. . . . In conducting our analysis, we focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Yusuf*, supra, 70 Conn. App. 622–23. With those principles in mind, we will review each of the defendant's claims.

## A

The defendant first claims that the prosecutor's questioning of Detective Joseph Greene of the New Haven police department regarding Greene's position as a member of the Connecticut fugitive task force and his

involvement in the arrest of the defendant along with the prosecutor's comments during closing argument to the jury with respect thereto were "intended to falsely and prejudicially portray [the defendant] to the jury as a modern day [John] Dillinger, a dangerous, desperate fugitive who could only be captured through what amounted to a military operation involving state as well as federal law enforcement personnel." The defendant mischaracterizes the prosecutor's questioning of Greene and the comments during closing argument regarding Greene's testimony.

Greene testified that he was a member of the fugitive task force, a unit comprised of federal and state agents, whose responsibility is to apprehend Connecticut's most wanted fugitives. On December 4, 1996, the task force learned that the defendant was at a residence on Richard Street in New Haven. Upon arriving at the location, task force members knocked on the door several times and announced themselves. After a delay, the door was opened and a pit bull came toward the officers. The dog attacked one of the officers and was shot. The task force then entered the apartment and located the defendant standing fully clothed in the shower, where he was placed under arrest.

Greene testified about only the events surrounding the defendant's arrest. The state can present evidence to show "the investigative effort made by the police and the sequence of events as they unfolded . . . ." (Internal quotation marks omitted.) *State* v. *Dudley*, 68 Conn. App. 405, 423, 791 A.2d 661, cert. denied, 260 Conn. 916, 797 A.2d 515 (2002). As such, Greene's testimony was admissible.

The defendant further claims that the prosecutor's remarks during closing argument, with respect to the

testimony that Greene provided, were improper.[5] Those remarks merely summarized Greene's properly admitted testimony. Accordingly, the remarks during closing argument were not improper.

## B

The defendant next contends that the prosecutor "injected prejudicial, accusatory and irrelevant questions intended to falsely imply to the jury that [the defendant] was involved in drugs, possessed a number of guns, owned a pit bull, which he used to guard his illicit stash of guns and drugs, and had told his mother in the days immediately after the shootings on Rosette Street that he intended to leave the state." We disagree.

The defendant testified at trial. On direct examination, he testified as follows. On the morning of November 26, 1996, he smoked marijuana and drank two forty ounce containers of beer and some gin and juice. At approximately 1 p.m., he was walking along Rosette Street where he saw Green, Blackwell and Cole near the street curb. As he was walking past the group, Green grabbed and attempted to take the chain that was around his neck. The chain had a medallion on it of the head of Jesus. Green brandished a gun, and a

---

[5] The prosecutor stated in closing argument in relevant part: "Then we heard from Detective Joseph Greene from the Connecticut fugitive task force. We know that on the force, they look for Connecticut's most wanted fugitives. And we know that they cooperate, and there were members on the team that day from the [Federal Bureau of Investigation] and Milford police department, and uniformed New Haven officers. He told us of the addresses that he was looking at for [the defendant]. He told us that finally, they narrowed it to 9 Richard Street, I believe, second floor, and they surrounded the building with uniformed officers. And then he showed us on the jury door how he knocked and said, 'Police. Open up,' and how many times he did that. He said around seven, I think. And he said he did it louder there than he did here. And he talks about hearing the dog start to bark, stop barking and hearing the footsteps, eventually the dog coming out and [biting] another officer. And then finally this defendant in a bathtub with the shower curtain closed, fully clothed, hiding behind the shower curtain."

struggle ensued over its possession. During the struggle, two shots were fired. Once the defendant obtained possession of the gun, he fired another shot at Green. The defendant then ran to Bryant's car, which was stopped nearby, and fled.

On cross-examination, the prosecutor asked the defendant whether he had possessed a firearm. The prosecutor also asked the defendant whether he had safes in his house that he used to store drugs and guns. The prosecutor then asked the defendant whether he had the gun that was used in the shootings in a safe he kept in his home and whether he had owned the pit bull to protect the safe. Further, the prosecutor asked the defendant whether he had told his mother after the shootings that he planned to leave the state. The prosecutor's questioning was not inappropriate.

"[B]y exercising his fifth amendment right to testify on his own behalf, it is axiomatic that a defendant opens the door to comment on his veracity. It is well established that once an accused takes the stand and testifies his credibility is subject to scrutiny and close examination. . . . A defendant cannot both take the stand and be immune from impeachment. . . . An accused who testifies subjects himself to the same rules and tests which could by law be applied to other witnesses." (Internal quotation marks omitted.) Id., 413. "A trial court has wide discretion both as to the allowance of questions involving relevancy and remoteness and as to the scope of cross examination to show contradictory statements." 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 10c (2), p. 38.

The defendant, who did not object to the prosecutor's questions at trial, put his credibility at issue by testifying. In permitting the prosecutor's questioning regarding the presence of guns and drugs, the use of a safe, whether the pit bull guarded the drugs and guns, and

the defendant's statement to his mother, the court did not abuse its discretion in determining the scope of cross-examination. Furthermore, the defendant's argument that the prosecutor acted improperly by not accepting the defendant's answers at face value and then moving on to inquire about other topics is without merit.

The defendant also claims that the state's comments during closing argument, with respect to guns and the statement he made to his mother, were improper.[6] "[A] prosecutor may properly comment on the credibility of a witness where . . . the comment reflects reasonable inferences from the evidence adduced at trial. . . . Moreover, [b]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument." (Citation omitted; internal quotation marks omitted.) *State* v. *Yusuf*, supra, 70 Conn. App. 625. We therefore conclude that the prosecutor's comments were not improper.

## C

The defendant next claims that the prosecutor acted improperly by attempting to impeach him through the use of a written statement that Bryant had given to the police. We disagree.

---

[6] The prosecutor stated in closing argument in relevant part: "[The defendant] admitted to knowing how to use a gun. Now, think about it. He's high. He's drunk. He's everything else. Yet he could wrestle with [Green] and know how to shoot just like that, but he's never been in possession of a gun before, he says. Come on. He admitted he had a couple of [safes]. He didn't admit he ever had any guns with him, but, ladies and gentlemen, just think about that.

\* \* \*

"Then, he denies being on the run. He's just hanging out in New Haven. He said different—he's not at—in his room at his mother's house. He's at different addresses. He said, oh, I left—I would have left the state. Interestingly enough, when I asked him, 'Did you tell your mother you were going to leave the state on November 30, 1996?' Oh, no. It just seems too packed, ladies and gentlemen. He has an explanation for anything."

On cross-examination, the prosecutor asked the defendant whether he had met with Bryant after the shootings and before the defendant's arrest. The defendant initially denied that such a meeting took place, but later testified that he had "no recollection of that." The prosecutor then showed the defendant Bryant's statement in an attempt to refresh his recollection. Defense counsel then asked what page the prosecutor was having the defendant review. The prosecutor replied: "This is Gino Bryant's statement, and it's page—" before he was interrupted by defense counsel, who asked that the jury be excused. Outside of the jury's presence, the court overruled the defendant's objection and permitted the prosecutor to use Bryant's statement in an attempt to refresh the defendant's recollection as to whether the defendant had met with Bryant following the shootings.

With the jury present, the prosecutor asked the defendant whether Bryant's statement would refresh his recollection about a conversation the day following the shootings in which Bryant said to the defendant: "Yo, we into some hot shit, man." The defendant testified that the statement did not refresh his recollection, and the prosecutor proceeded to a different line of inquiry.

Although the defendant's claim is that the prosecutor sought to use Bryant's statement to impeach the defendant, a review of the record demonstrates that the prosecutor's purpose in using the statement was to refresh the defendant's recollection about a conversation he had with Bryant after the shootings. "*Any* object or writing may be used by a witness to refresh the witness' memory while testifying. . . ." (Emphasis added.) Conn. Code Evid. § 6-9 (a). "The object or writing need not be admissible because the witness will testify from his . . . refreshed recollection, not from the object or writing that was used to refresh his . . . recollection." Id., § 6-9 (a) commentary. The prosecutor's use of Bry-

ant's statement in an attempt to refresh the defendant's recollection was permissible.

The defendant further argues that he was prejudiced as a result of the prosecutor's reading from Bryant's statement when asking if the statement would help refresh the defendant's recollection. The defendant, however, offers no authority or analysis for his assertion. Rather, he simply states that he was prejudiced because of the prosecutor's mention that the document was a statement from Bryant. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Vicente*, 62 Conn. App. 625, 632, 772 A.2d 643 (2001).

### D

The defendant's final claim of prosecutorial misconduct is that the prosecutor "groundlessly and prejudicially impugned the sincerity of [his] religious beliefs . . . ." The defendant's assertion is without merit.

The defendant's claim rests on the prosecutor's comment during closing argument that "[u]p until yesterday, there never was any jewelry hanging out of his shirt. Yesterday was the first time he had that cross over his tie. He has it out again today. You think it, that was not planned?" The defendant, however, has failed to show how that comment impugned his religious beliefs.

When read in conjunction with the prosecutor's immediately preceding remarks, it is clear that the prosecutor's comment did not have religious undertones.[7]

---

[7] The prosecutor stated: "Now, we get to this chain issue. Now, you saw the chain. Heard what he said, ten carat gold. Now, if you are going to be robbed, are you going to fight for your life over a piece of ten carat gold or are you going to give it up? I thought he said it maybe had some sentimental value to him. People have certain things, maybe a wedding ring and engagement ring, something from a dead relative, it really means something to them. That's not even the case. What does he do? He sells it and then he

The defendant testified that he had shot Green in self-defense and that Green had used a firearm in an attempt to steal the chain that he was wearing, which had a medallion of the head of Jesus. The prosecutor's comments, however, were directed at the defendant's version of events, not at his religious beliefs. No fair reading of the prosecutor's comments reveals an attempt to call into question the sincerity of the defendant's religious beliefs.

### E

Having concluded that the prosecutor's questioning of the witnesses and his comments during closing argument were not improper, we need not address whether the defendant was substantially prejudiced. See *State v. Thompson*, 69 Conn. App. 299, 307, 797 A.2d 539, cert. granted on other grounds, 260 Conn. 936, 802 A.2d 90 (2002). Accordingly, the defendant's claim that he was deprived of a fair trial because of a pattern of prosecutorial misconduct is without merit.

### F

The defendant also seeks plain error review of his claims of prosecutorial misconduct. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State v. J.R.*,

has to find the person he sold it to to bring it in to show you. Doesn't—just doesn't make sense. And think about it, you all were picked as jurors. He was sitting here. Up until yesterday, there never was any jewelry [hanging] outside his shirt. Yesterday was the first time he had that cross over his tie. He has it out again today. You think it, that was not planned?"

69 Conn. App. 767, 778, 797 A.2d 560, cert. denied, 260 Conn. 935, 802 A.2d 89 (2002). As we previously concluded, there was no misconduct by the prosecutor. Accordingly, plain error review is not warranted.

II

The defendant next claims that the court's consciousness of guilt instruction deprived him of due process by invading the fact-finding province of the jury. Specifically, the defendant argues that the court improperly stated: "The defendant's initial flight and hiding does not raise a legal presumption of guilt, but it is to be given the weight to which the jury thinks it is entitled under the circumstances shown in this case." It is the defendant's contention that the court "instructed the jury to treat as fact a disputed factual predicate for the consciousness of guilt instruction . . . ." We decline to review the defendant's claim.

The defendant concedes that his claim was not preserved properly at trial. Therefore, he seeks review under *State* v. *Golding,* supra, 213 Conn. 239–40, or the plain error doctrine. Practice Book § 60-5. The defendant's claim fails to satisfy the second prong of *Golding* because it is not of constitutional magnitude. "It has . . . been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the . . . *Golding* standard." (Internal quotation marks omitted.) *State* v. *Turner,* 67 Conn. App. 519, 527, 787 A.2d 625 (2002). Accordingly, we decline to afford *Golding* review to the defendant's claim as to the court's consciousness of guilt instruction.

As previously stated, "[p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . The claimed error here is not so

egregious or obvious as to merit such review. . . . The instructions read as a whole did not result in an unreliable verdict or miscarriage of justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Tyson*, 43 Conn. App. 61, 66, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996). Accordingly, plain error review is not warranted.

### III

The defendant also asks us to exercise our supervisory powers to abolish the consciousness of guilt instruction. We decline that invitation.

"[T]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide. . . . Accordingly, we are guided in the resolution of this claim by *State* v. *Hines*, 243 Conn. 796, 709 A.2d 522 (1998). In *Hines*, our Supreme Court rejected the invitation to overrule precedent permitting such instructions. . . . Regarding the defendant's request that we invoke our supervisory powers to promulgate a rule precluding jury instructions on consciousness of guilt, the *Hines* court declined to exercise its supervisory powers, noting that it did not consider this an appropriate case for the exercise of [its] supervisory powers . . . since [a] blanket rule governing flight instructions would not serve the narrow purpose that [its] supervisory powers are intended to further." (Citations omitted; internal quotation marks omitted.) *State* v. *Portee*, 55 Conn. App. 544, 569–70, 740 A.2d 868 (1999), cert. denied, 252 Conn. 920, 744 A.2d 439 (2000); see also *State* v. *Figueroa*, 257 Conn. 192, 197, 777 A.2d 587 (2001). Accordingly, we will not, and cannot, exercise our supervisory powers to abolish the consciousness of guilt instruction.

### IV

The defendant's final claim is that the court violated the constitutional prohibition against double jeopardy

when it applied the five year sentence enhancement provision of § 53-202k[8] to his sentence for manslaughter in the first degree with a firearm. We disagree.

Our resolution of the defendant's claim is controlled by our Supreme Court's decision in *State* v. *McMahon*, 257 Conn. 544, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002). In *McMahon*, our Supreme Court addressed the identical issue now raised by the defendant. Id., 557–58. In rejecting the double jeopardy challenge in *McMahon*, the court, after reviewing the express language of § 53-202k and the legislative history surrounding its enactment, held that "[o]n the basis of the plain language of § 53-202k, its legislative history, and prior court decisions interpreting the statute, we conclude that the application of § 53-202k's sentence enhancement to manslaughter in the first degree with a firearm, a class B felony, does not violate double jeopardy." Id., 562.

As previously stated, "[t]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Portee*, supra, 55 Conn. App. 569. Accordingly, the defendant's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses . . . any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."