STATE OF CONNECTICUT *v.* YOLANDA DUBOSE
(AC 21999)

Foti, Mihalakos and Hennessy, Js.

Argued October 29, 2002—officially released February 18, 2003

*Gerald L. Harmon*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John M. Waddock*,

supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Yolanda Dubose, appeals from the judgment of conviction, rendered after a jury trial, of two counts of arson in the first degree in violation of General Statutes § 53a-111 (a) (3) and (4).[1] On appeal, the defendant claims that (1) the trial court improperly instructed the jury as to the concept of proof beyond a reasonable doubt, (2) the court improperly charged the jury on the identification of the defendant, (3) the court improperly charged the jury regarding an element of the offense, (4) the state produced insufficient evidence to establish the requisite element of intent and (5) certain remarks made by the prosecutor during cross-examination of the defendant and during closing argument to the jury amounted to prosecutorial misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 19, 1995, the defendant, who at the time was an eighteen year old single mother, purchased property located at 115 Rosette Street in New Haven. The defendant moved into the home and, after living there for a short time, became progressively concerned with drug activity and crime in the neighborhood. There were also several instances in which the defendant's residence had been broken into. Furthermore, the defendant became concerned with the property's poor sewage and plumbing, as well as lead paint in the prem-

---

[1] General Statutes § 53a-111 (a) provides in relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and . . . (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

ises. After just one month of residing at 115 Rosette Street, the defendant allowed the homeowner's insurance policy on the property to expire.

In February, 1996, the defendant visited the city of New Haven's office of housing and neighborhood development (city) and applied for a rehabilitation loan. The city notified the defendant that she could not obtain such a loan without first securing insurance on the property. Thereafter, the defendant visited a local insurance carrier to secure the required insurance on the property. The defendant was particularly interested in the "loss of use" coverage contained within the insurance policy. After the defendant purchased the necessary insurance, the defendant returned to the city and provided the necessary documentation to a case manager to acquire the loan. The city, however, declined to grant the loan. Foreclosure proceedings commenced on June 24, 1996, because the defendant failed to make her mortgage payments. Shortly thereafter, the defendant moved into a relative's residence.

On September 6, 1996, at approximately 2:40 a.m., the New Haven fire department received an anonymous telephone call that there was a fire at the 115 Rosette Street residence. Firefighters responding to the scene found the doors locked and upon entry noticed a heavy smell of gasoline. Investigators later determined that the fire had been started intentionally.

Thereafter, two eyewitnesses, Ernest Harper and Keith Randolph, came forward with information regarding the incident. Harper and Randolph reported to police that between 12:45 a.m. and 3 a.m. on September 6, 1996, they witnessed the defendant park her blue vehicle on the one-way street along the side of the residence. The defendant then proceeded to open the trunk of the vehicle, remove a square container and enter the premises. A few minutes later, the defendant

exited the property and just moments later, smoke and fire emerged from the house.

The state charged the defendant with arson in the first degree. The case was tried before a jury and on November 20, 2000, it returned a verdict of guilty. The court sentenced the defendant to a total effective prison term of twelve years, suspended after seven, with five years probation. This appeal followed. Additional facts will be provided as necessary.

I

The defendant first claims that she was deprived of a fair trial because the court improperly instructed the jury on the concept of proof beyond a reasonable doubt. Specifically, the defendant claims that the court improperly charged that (1) reasonable doubt is "proof by sufficient evidence to overcome the presumption of innocence on her part," (2) "[i]t is not required that the state prove the defendant guilty beyond all possible doubt," (3) "[t]he burden of proving her guilt beyond a reasonable doubt requires the state to produce sufficient evidence to create in your minds a strong and abiding conviction of the guilt of the defendant," (4) "[a] reasonable doubt is not a captious or frivolous doubt, nor is it a doubt which is raised by the ingenuity of a juror and unwarranted by the evidence, nor is it a doubt prompted by sympathy for the defendant," (5) "[a]bsolute certainty in the affairs of life is almost never attainable, and the law does not require absolute certainty to authorize a conviction" and (6) "[b]ut for the safety and well being of society and the protection of life and property, the state is concerned with securing the conviction of people who have been proved by the evidence beyond a reasonable doubt to be guilty of committing a crime or crimes charged against that person." We reject the defendant's claims.

The defendant concedes that the issue was not preserved at trial because she failed to submit a requested jury charge and failed to object to the court's instruction. She seeks review, however, under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] We review the claim under *Golding* because the record is adequate for our review, and a claim that challenges the propriety of jury instructions on the law of reasonable doubt is of constitutional magnitude. *State* v. *Green*, 62 Conn. App. 217, 242, 774 A.2d 157 (2001), aff'd, 261 Conn. 653, 804 A.2d 810 (2002); see *State* v. *Solman*, 67 Conn. App. 235, 239, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002).

"Our Supreme Court's standard of review regarding claims of improper jury instruction is well established. [A] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is

___

[2] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim. . . . The appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Solman*, 67 Conn. App. 235, 238, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002). "In the absence of any one of the four *Golding* conditions, the defendant's claim will fail." *State* v. *Andresen*, 256 Conn. 313, 325, 773 A.2d 328 (2001).

whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Person*, 60 Conn. App. 820, 825–26, 761 A.2d 269 (2000), cert. denied, 255 Conn. 926, 767 A.2d 100 (2001); see also *State* v. *Lemoine*, 256 Conn. 193, 202–203, 770 A.2d 491 (2001).

On the basis of our review of the charge in its entirety, we conclude that the court's instructions did not mislead the jury. The court's instructions were correct in law, adapted to the issues and sufficiently guided the jury on the law of reasonable doubt by providing clear and concise instructions. Furthermore, this court and our Supreme Court have upheld instructional language identical to the language complained of here. See, e.g., *State* v. *Morant*, 242 Conn. 666, 687 n.13, 701 A.2d 1 (1997) (upholding language that "[i]t is not required that the state prove the defendant guilty beyond all possible doubt"); *State* v. *Mejia*, 233 Conn. 215, 242 n.20, 658 A.2d 571 (1995) (upholding language that "but for the safety and well-being of society and the protection of life and property, the State is concerned in securing the conviction of persons who have been proven by the evidence beyond a reasonable doubt to be guilty of committing the crimes charged"); *State* v. *Ross*, 230 Conn. 183, 221, 646 A.2d 1318 (1994) (upholding language that "proof which leaves you with a strong and abiding conviction that the accused is guilty"), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); *State* v. *Ryerson*, 201 Conn. 333, 343 n.2, 514 A.2d 337 (1986) (upholding language that "[a]bsolute certainty in the affairs of life is almost never attainable, and the law does not require absolute certainty to authorize a conviction"); *State* v. *Boykin*, 27 Conn. App. 558,

572, 609 A.2d 242 (upholding language that "reasonable doubt is not a captious or frivolous doubt nor is it a doubt raised by the ingenuity of counsel or by a juror and unwarranted by the evidence; nor is it a doubt prompted by sympathy for the defendant"), cert. denied, 223 Conn. 905, 610 A.2d 179 (1992); *State* v. *Iovieno,* 14 Conn. App. 710, 726 n.9, 543 A.2d 766 (upholding jury instruction containing language that "proof by sufficient evidence to overcome the presumption of innocence on his part"), cert. denied, 209 Conn. 805, 548 A.2d 440 (1988). Consequently, the defendant's claim fails to satisfy the third prong of *Golding* because it fails to establish that a constitutional violation clearly existed and clearly deprived her of a fair trial.

## II

The defendant argues that the court improperly instructed the jury on identification of the defendant. The defendant advances two arguments in support of her claim. She first argues that although the state's two witnesses had criminal records and were not credible, the court refused to charge the jury as to the possibility of fabrication by those witnesses. The defendant next argues that the court failed to charge the jury on mistaken identity, a theory raised by the defendant.

With regard to the fabrication argument, we initially note that the defendant properly preserved that issue by way of her exception to the court's charge.[3] Applying

[3] The following colloquy took place regarding the identification charge:

"The Court: . . . [A]ny exceptions?

"[Defense Counsel]: I'm not particularly crazy about the identification charge . . . because it doesn't seem to take into consideration that those individuals who claimed to have identified my client may in fact—

"The Court: Didn't take into consideration what?

"[Defense Counsel]: That those individuals who have identified my client-

"The Court: Yeah?

"[Defense Counsel]:—they may in fact be deliberately misstating the truth. I mean, the whole identification goes to the opportunity to observe, motive, all that, but it doesn't have anything in there about fabrication.

"The Court: There was no request to charge on identification, and I think the charge was adequate. No corrections to the charge."

the standard of review set forth in part I, we conclude, however, on the basis of our review of the charge as a whole, that the court's charge was proper and adequately covered the dangers of witness misidentification and fabrication. The record reveals that the court sufficiently addressed the issue of witness credibility, witness dishonesty and untruthfulness. The court instructed the jury to consider witness credibility relative to the witnesses' abilities to observe, their attitude and demeanor on the witness stand, and their powers of observation, judgment, recollection and any prejudice or bias.[4] The court specifically instructed the jury that "[i]f . . . you should conclude that a witness has not only testified inaccurately, but that he or she has done that intentionally or wilfully, *in other words lied to you*, that fact would cast a very serious doubt upon all of that witness's testimony." (Emphasis added.) Furthermore, the court reminded the jurors that the state's two eyewitnesses, Harper and Randolph, were convicted felons and that the jury could find that this status affects their credibility. The charge was clear, concise and it adequately guided the jury.

The defendant additionally argues that the court did not charge the jury on the theory of mistaken identity and seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, because she failed to take exception or request a charge to the jury. We will review the claim because the record is adequate for review, and "[i]t is settled law that a defendant who has produced evidence supporting a legally recognized defense is entitled, as a matter of law, to a theory of defense instruction, and that the denial of such an instruction is a violation of due process." *State* v. *Small*, 242 Conn. 93, 104, 700 A.2d 617 (1997). We conclude, however, that the defendant has failed to establish that a constitutional viola-

---

[4] That is commonly referred to as a *Telfaire* instruction. See *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972).

tion clearly existed and clearly deprived her of a fair trial and, therefore, her claim fails to satisfy the third prong of *Golding*.

The court instructed the jury a follows: "[T]he defendant denies that she was the person who was involved in the commission of these offenses. *She is thus raising the question of mistaken or inaccurate identity.* Identification is a question of fact for you to decide, taking into consideration all of the evidence that you have seen and heard in the course of the trial. The state has the burden of proving beyond a reasonable doubt that the defendant was the perpetrator of the crimes. You, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict her. . . . The identification of the defendant by two or even one witness as the one involved in the commission of a crime may be sufficient to justify a conviction of such a person provided, of course, that you are satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed the crime. In arriving at a determination as to the matter of identification, you should consider all the facts and circumstances that existed at the time of the observation of the perpetrator by the witnesses and all the other evidence that bears on the question of identification." (Emphasis added.)

Furthermore, the court reiterated that charge by subsequently stating: "I again emphasize that the burden of proof on the prosecution extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identification of [the defendant] as the perpetrator of the crimes with which she stands charged. In short, you must consider the totality of the circumstances affecting the identification. If, after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, then you must find the defendant not

guilty."[5] After reviewing the court's charge in its entirety, we conclude that it properly instructed the jury with regard to the theory of mistaken identity. See *State* v. *Whipper*, 258 Conn. 229, 283, 780 A.2d 53 (2001) (considering nearly identical language contained in court's mistaken identity charge). We conclude that the charge regarding identification of the defendant was sufficient to guide the jury and that her claim fails to satisfy the third prong of *Golding*.

## III

Next, the defendant claims that she was deprived of a fair trial because the court improperly instructed the jury regarding an essential element of the crime. Specifically, the defendant contends that the court's instruction regarding the element of substantial risk of injury pursuant to § 53a-111 (a) (4)[6] is so broad and vague that the element is satisfied anytime a firefighter responds to a fire.[7] Because the defendant failed to preserve her claim at trial, she seeks *Golding* review.

---

[5] The defendant claims that this specific instruction improperly advised the jury regarding identification.

[6] Although the defendant's brief cites General Statutes § 53a-111 (a) (3), the statutory language quoted and challenged throughout her brief regarding the court's improper jury instruction on the element of a substantial risk of injury pertains to the language found in § 53a-111 (a) (4). We therefore consider the defendant's claim to challenge § 53a-111 (a) (4) rather than § 53a-111 (a) (3).

[7] In support of her claim that the court improperly charged the jury regarding an essential element of the crime, the defendant also argues that the state failed to produce sufficient evidence to support a jury finding that the element of a substantial risk of bodily injury was satisfied. We decline to review that claim because the defendant's brief contains no legal authority or analysis to support her claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Citation omitted; internal quotation marks omitted.) *In re Dorrell R.*, 64 Conn. App. 455, 469, 780 A.2d 944 (2001).

We will review the claim because the record is adequate for review, and the claim that the jury was not instructed on an essential element of an offense is of constitutional magnitude. See *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995); *State* v. *Padua*, 73 Conn. App. 386, 399, 808 A.2d 361 (2002). We conclude that the defendant has failed to establish that the alleged constitutional violation clearly existed and clearly deprived her of a fair trial. Her claim, therefore, fails to satisfy the third prong of *Golding*.

On the basis of the principles previously set forth, regarding claims of instructional error, we view the jury instruction as a whole. It is evident that the court gave a thorough instruction on the elements of the crime of arson pursuant to § 53a-111 (a) (4), including the element of substantial risk of injury. The court instructed the jury that "[t]he first element of this offense is that the defendant started or caused a fire or explosion . . . . The second element is that the state must prove that the defendant specifically intended to destroy or damage a building. . . . The third element that the state must prove . . . beyond a reasonable doubt is that at the scene of the fire or explosion, a firefighter was subjected to substantial risk of bodily injury. . . . A substantial risk of injury is one that is real, considerable and material."

On the basis of our review of the court's charge as whole, we conclude that the instructions sufficiently guided the jury on the element of a substantial risk of injury so that no injustice resulted. "Where a statute uses language that requires no legal definition because it has a commonly accepted meaning, there is no need to define it for the jury." *State* v. *Wall*, 40 Conn. App. 643, 670, 673 A.2d 530, cert. denied, 237 Conn. 924, 677 A.2d 950 (1996). Merriam-Webster's Collegiate Dictionary (10th Ed. 1999) defines "substantial" as "real" and "considerable," and courts often have defined the word

"substantial" in that way. See *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 359, 736 A.2d 824 (1999) (defining "substantial"); *Fisette* v. *DiPietro*, 28 Conn. App. 379, 384, 611 A.2d 417 (1992) (same); *State* v. *Silano*, 204 Conn. 769, 777 n.3 & 778, 529 A.2d 1283 (1987) (same). The court provided ample guidance to the jury as to the meaning of "substantial." Accordingly, we conclude that the defendant cannot prevail on her claim under the third prong of *Golding* because she has not established that a constitutional violation clearly exists that clearly deprived her of a fair trial.

## IV

Next, the defendant claims that the state failed to produce sufficient evidence to establish the requisite element of intent, as required by § 53a-111.[8] Specifically, the defendant argues that her right to a fair trial was violated under the fourteenth amendment to the United States constitution and the constitution of Connecticut, article first, § 8, because the evidence was insufficient to establish that she possessed specific intent.[9]

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence

[8] According to General Statutes § 53a-111 (a), to be found guilty of arson in the first degree, a person must possess the "intent to destroy or damage a building . . . ." General Statutes § 53a-100 defines the term "building."

[9] The defendant concedes that she failed to preserve her claim at trial and, therefore, seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 281, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). "Our Supreme Court, following the dictate of the United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), has held that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Internal quotation marks omitted.) *State* v. *Padua*, supra, 73 Conn. App. 392.

in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The question on appeal is not whether we believe that the evidence established guilt beyond a reasonable doubt, but rather whether, after viewing the evidence in the light most favorable to sustaining the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . While the jury may not speculate to reach a conclusion of guilt, [it] may draw reasonable, logical inferences from the facts proven to reach a verdict. . . . Deference is given to the trier of fact who had the opportunity to observe the conduct, demeanor and attitude of the trial witnesses and to assess their credibility." (Internal quotation marks omitted.) *State* v. *Jimenez*, 73 Conn. App. 664, 666, 808 A.2d 1190, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002).

In the present case, the state presented ample evidence and testimony from which the jury could reasonably infer that the defendant possessed the requisite intent to destroy the building. On October 19, 1995, the defendant purchased the property located at 115 Rosette Street in New Haven and, within a short time, was faced with significant problems. The interior was contaminated with lead paint. There was faulty plumbing and problems with the sewage system. The building was located in an area where crime and illegal drug activity was prevalent. In addition, the city refused to give her a loan so that she could rehabilitate the property. Shortly thereafter, the bank began foreclosure proceedings when she failed to make her mortgage payments.

On the basis of the evidence previously recited, as well as the testimony of Harper and Randolph, the jury

reasonably could have inferred and concluded that the defendant possessed the requisite intent to destroy the building and to collect on her insurance by starting a fire. Accordingly, the state produced sufficient evidence to support the jury's verdict of guilty.

V

Finally, the defendant claims that the prosecutor engaged in prosecutorial misconduct. First, she claims that the prosecutor improperly asked her on cross-examination to comment on the veracity of other witnesses. Second, the defendant claims that statements made by the prosecutor in closing argument to the jury were improper. Consequently, the defendant claims that she was deprived of a fair trial under the due process clauses of both the United States and Connecticut constitutions.

"We first note that our review of the defendant's claims must be bifurcated because only one of them was preserved properly at trial by objection. . . . The defendant . . . requests review under *State* v. *Golding*, [supra, 213 Conn. 239–40], for [her] unpreserved [claim] . . . . Accordingly, we review the defendant's claims of prosecutorial misconduct in two parts." (Citation omitted.) *State* v. *Johnson*, 71 Conn. App. 272, 284, 801 A.2d 890, cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002).

A

We first address the preserved claim. The defendant argues that the prosecutor improperly questioned her on cross-examination regarding the veracity of other witnesses who had testified.[10]

---

[10] The defendant seeks *Golding* review although she objected to the prosecutor's questioning in a timely manner. Because the claim was preserved properly at trial, *Golding* review is not necessary.

"The standard of review for a claim of prosecutorial misconduct is well established. [T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Beverly*, 72 Conn. App. 91, 96, 805 A.2d 95, cert. denied, 262 Conn. 910, 810 A.2d 275 (2002).

"In order to determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant." (Internal quotation marks omitted.) Id. "The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court . . . has focused on several factors." (Internal quotation marks omitted.) *State* v. *Sostre*, 73 Conn. App. 848, 852, 809 A.2d 1141 (2002), cert. denied, 262 Conn. 942, 815 A.2d 673 (2003). "The ultimate question is . . . whether the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process. . . . This final determination requires . . . the consideration of several factors: the extent to which the misconduct was invited by defense conduct or argument, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, the strength of the curative measures adopted and the strength of the state's case." (Citation omitted; internal

quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 723, 793 A.2d 226 (2002); see also *State* v. *Whipper*, supra, 258 Conn. 262–63.

It is a "well established evidentiary rule that it is improper to ask a witness to comment on another witness' veracity." *State* v. *Singh*, supra, 259 Conn. 706. That is because such questions not only invade the province of the jury, in that determinations of credibility are for the jury to decide, but those questions also have no probative value because they are not helpful to the jury in assessing witnesses' credibility. Id., 707–708.

The transcript reveals that defense counsel, on direct examination, asked the defendant to recall several instances of other witnesses' testimony. Later, on cross-examination, the prosecutor questioned the defendant's recollection of other witnesses' testimony and inquired whether her version was significantly different from the previous testimony given by the other witnesses.[11] Although the prosecutor improperly asked the defendant to comment on other witnesses' veracity, the prosecutor's questioning occurred just once and was not

---

[11] The defendant specifically claims that the following questioning by the prosecutor was improper:

"[Prosecutor]: And, ma'am, is it fair to say your version of what you recall differs fairly significantly from what a number of the other witnesses—

"[Defense Counsel]: Objection. That's—

"The Court: Objection sustained.

"[Defense Counsel]:—obviously for the jury.

"The Court: Objection sustained. Not up to the witness to compare their testimony with other witnesses.

"[Prosecutor]: Yes, Your Honor.

"[Prosecutor]: Didn't you in fact tell Detective [Joseph] Pettola and fire investigator [Frank] Dellamura that you had in fact left Connecticut the preceding Thursday? In other words, a week and a day before the fire took place? Didn't you tell them that?

"[Defendant]: No, I did not . . . .

"[Prosecutor]: By the way, you've had a chance to hear all the witnesses here in court?

"[Defendant]: Objection, Your Honor."

prejudicial to the defendant because the court sustained the defendant's objection and the prosecutor proceeded with another line of inquiry. Additionally, the state had a very strong case against the defendant. We conclude that the defendant has failed to demonstrate that the prosecutor's questioning of her was prejudicial or that the misconduct was so serious that it deprived her of a fair trial.

## B

Finally, we address the defendant's unpreserved claim that the prosecutor's statements during closing argument to the jury were improper. The defendant claims that the prosecutor's comments regarding witness credibility invaded the province of the jury.[12]

"We review the claim because the record is adequate to do so, and an allegation of prosecutorial misconduct in violation of the defendant's fundamental right to a fair trial is of constitutional magnitude." *State* v. *L'Minggio*, 71 Conn. App. 656, 675, 803 A.2d 408, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002). We conclude, however, that the defendant's claim fails to satisfy the third prong of *Golding* because the prosecutor's remarks did not deprive her of a fair trial.

"We have long held . . . that *Golding* review of such a claim will not result in reversal where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal

---

[12] The defendant challenges the following portion of the prosecutor's closing argument: "Like I said . . . I would suggest to you it should offend your common sense that everybody else, by the defendant's testimony and by [defense counsel's] statements, is apparently either lying or not to be believed or seriously mistaken. Not only were the investigating officials and—such as Detective [Joseph] Pettola, [fire investigator Frank] Dellamura and, I guess, [state police Trooper Michael] Laraia wrong, not only were Ernest Harper and Keith Randolph lying, but I guess . . . [other witnesses also] must have fabricated what they had to say in connection with this matter. And I, finally, I guess, if the defendant] is to [be] believed, even pictures lie."

a pattern of conduct repeated throughout the trial . . . because in such a case the claimed misconduct is insufficient to infect the fundamental fairness of the trial itself. . . . In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates . . . . Furthermore, in considering the defendant's prosecutorial misconduct claim, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson*, supra, 71 Conn. App. 288.

A thorough review of the transcript and record reveals that the prosecutor encouraged the jurors to use their common sense when evaluating the evidence, and the testimony and credibility of all testifying witnesses, including that of the defendant. Even if we were to conclude that the statements were improper, they were isolated and brief, caused no prejudice to the defendant and did not constitute a pattern of misconduct that was blatantly egregious or violated the defendant's right to a fair trial. Accordingly, we conclude that the defendant's claim fails to satisfy the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.