STATE OF CONNECTICUT *v.* SCOTT
GREGORY HOULE
(AC 27403)

McLachlan, Harper and Peters, Js.

---

Argued November 29, 2007—officially released February 19, 2008

*Suzanne Z. Curtis*, assistant public defender, for the appellant (defendant).

*Sarah Hanna*, deputy assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Vincent J. Dooley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal from the defendant's conviction of a number of crimes arising out of the defendant's unauthorized entry into a building that subsequently was damaged by fire, the principal issue is the sufficiency of the evidence at trial to establish that the defendant set the fire intentionally. The defendant also raises a number of claims of prosecutorial impropriety, particularly challenging the prosecutor's downplaying of the role of intoxication in criminal intent. We conclude that the defendant cannot prevail on the merits of these claims, even though his conviction on two charges must be set aside for a retrial on the ground of legal inconsistency. We therefore affirm the judgment in part and reverse it in part.

In a four count information filed on October 19, 2005, the state charged the defendant, Scott Gregory Houle, with arson in the first degree in violation of General Statutes § 53a-111 (a) (4), burglary in the third degree

in violation of General Statutes § 53a-103 (a), criminal mischief in the first degree in violation of General Statutes § 53a-115 (a) (1)[1] and larceny in the sixth degree in violation of General Statutes § 53a-125b. In addition, the following day, the state filed a second information charging the defendant, in two counts, with being a persistent serious felony offender in violation of General Statutes § 53a-40 (c) and a persistent felony offender in violation of General Statutes § 53a-40 (f). After a trial to a jury, the defendant was convicted as charged, except that on the charge of arson in the first degree, the jury found him guilty of the lesser included offense of arson in the third degree in violation of General Statutes § 53a-113.[2] The defendant has appealed from the judgment of the trial court sentencing him to a total effective term of twelve years imprisonment and four years of special parole.

The jury reasonably could have found the following facts, which are largely undisputed. In the early morning of April 24, 2004, the defendant, who was inebriated, made his way to a building located at 141 Providence Street in Putnam. Shattering the glass of the front entrance door with a rock, the defendant entered the building and, with his lighter, started a fire in a closet in a first floor accounting office. The defendant then took a box of pens, a laptop bag and some stamps from the office before leaving the burning building. As a result of a telephone call by an observant neighbor, a

[1] General Statutes § 53a-115 (a) provides in relevant part: "A person is guilty of criminal mischief in the first degree when: (1) With intent to cause damage to tangible property of another and having no reasonable ground to believe that such person has a right to do so, such person damages tangible property of another in an amount exceeding one thousand five hundred dollars . . . ."

[2] General Statutes § 53a-113 (a) provides: "A person is guilty of arson in the third degree when he recklessly causes destruction or damage to a building, as defined in section 53a-100, of his own or of another by intentionally starting a fire or causing an explosion."

Putnam police officer apprehended the defendant as he was trying to climb a fence behind the building.

The police escorted the defendant to the Putnam police station, where they read him his *Miranda* rights[3] before questioning him about what had transpired. Although initially he misidentified himself and wrongly accused two other men of having started the fire, eventually he signed a statement stating: "The building was in my path of walking. The door was opened and I walked in, I looked around, I went to the closet, the fire was lit with matches and my lighter. But I am not saying I lit it. The fire was lit in the closet. I don't think it was intentional. It was like a f___ around thing. I didn't think it would go anywhere. It was the thing to do."

Because the fire progressed rapidly, it caused more than $300,000 of damage to the building. After inspecting both the interior and the exterior portions of the building, a detective from the state fire marshal's office testified that the fire had originated in the closet of the accounting office and had been set intentionally by human hands.

The defendant's appeal requires us to address three issues. He maintains that (1) his conviction of arson in the third degree must be set aside and an order of acquittal entered for that charge because the state failed to introduce sufficient evidence to prove that the fire was incendiary in nature, (2) he is entitled to a new trial because the trial court misinstructed the jury on consciousness of guilt and (3) he is entitled to a new trial because of prosecutorial improprieties during the prosecutor's closing argument to the jury. We are unpersuaded by those claims. Because the state concedes, however, and we agree, that the defendant's conviction

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

of criminal mischief in the first degree cannot be reconciled with his conviction of arson in the third degree because the conviction of each crime depends on proof of irreconcilably inconsistent states of mind, the judgment must be reversed as to those crimes and the case remanded for a new trial. Accord *State* v. *King*, 216 Conn. 585, 593–95, 583 A.2d 896 (1990) ("the statutory definitions of 'intentionally' and 'recklessly' are mutually exclusive and inconsistent"), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991).

## I

The defendant's first claim of error challenges the sufficiency of the evidence adduced by the state to prove that he violated General Statutes § 53a-113 (a), which provides in relevant part that "[a] person is guilty of arson in the third degree when he recklessly causes destruction or damage to a building . . . by intentionally starting a fire . . . ." In the defendant's view, although concededly he lit matches and flicked his lighter in the closet, he did not start the fire deliberately. According to the defendant, the fire resulted from an accident attributable to his inebriated carelessness and not from intentional misconduct. He claims, therefore, that neither his statement to the police nor the testimony of the detective from the state fire marshal's office provide sufficient evidence to prove beyond a reasonable doubt that the fire was incendiary in origin.[4] We disagree.

A well established standard of review governs our consideration of claims of evidentiary sufficiency. As

---

[4] The court properly charged the jury: "The fire must be incendiary in origin. That means [it] must not be accidental or careless. In considering whether the fire was incendiary in origin, you may rely upon all the facts and circumstances at the time and place of the fire as you find them to have been proven and again, may draw any reasonable and logical inference from such facts as to whether the defendant acted with the necessary intent."

stated by our Supreme Court: "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 177–78, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

To prevail on this claim, the defendant argues that it was unreasonable for the jury (1) to have credited the testimony about the origins of the fire presented

by the detective from the office of the fire marshal and (2) to have inferred intent from the defendant's admissions at the police station. The defendant claims that the jury reasonably could not have credited the detective's testimony because, even though the detective deduced that the fire had been intentionally set by human hands, he already had been told upon arriving at the scene that a suspect had been apprehended. The defendant further claims that he never admitted intent in his signed statement.

We disagree with the defendant's appraisal of the evidence. The jury reasonably might have found the detective's testimony persuasive on its own merits and reasonably might have drawn inferences from the defendant's own statements to support a finding that the defendant intentionally set the fire. In its appraisal of the evidence as a whole, moreover, the jury reasonably might have attached significance to the fact that the defendant was apprehended fleeing from the scene of the fire.

Viewed in its entirety, the evidence presented by the state, if believed by the jury, was sufficient to establish the defendant's guilt of arson in the third degree. Indeed, in his reply brief, the defendant concedes that the state presented sufficient evidence for the jury to find that he started the fire. His only defense, therefore, is that the fire was accidental "due to his intoxicated state." The fact that the defendant was under the influence of alcohol did not, however, require the jury to find that he did not act intentionally in setting the fire. See *State* v. *Rice*, 105 Conn. App. 103, 109, 936 A.2d 694 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1101 (2008).

II

The defendant next argues that he is entitled to a new trial because the trial court misinstructed the jury on consciousness of guilt. Referring to evidence of the defendant's possession of stolen items when he fled

from the burning building, the court instructed the jury that such conduct might tend to show a consciousness of guilt. The defendant maintains that this instruction is reversible error.

Before we address the merits of the defendant's claim, we must decide whether this issue is properly before us. At trial, the defendant did not file a request to charge on consciousness of guilt or take an exception to the court's instructions as given. Concededly, instructions on consciousness of guilt do not warrant *Golding* review[5] because they do not implicate a defendant's constitutional rights. *State* v. *Luster*, 279 Conn. 414, 421–22, 902 A.2d 636 (2006).

The defendant argues instead that we should undertake plain error review pursuant to Practice Book § 60-5. We decline to do so. *State* v. *Preyer*, 198 Conn. 190, 199, 502 A.2d 858 (1985), on which the defendant relies, is readily distinguishable because it concerned a charge to the jury that overlooked an applicable statute. See also *State* v. *Burke*, 182 Conn. 330, 331–32, 438 A.2d 93 (1980). This case is governed instead by the numerous cases cited by the state that have held that a claim of error in a consciousness of guilt instruction does not warrant plain error review. See, e.g., *State* v. *Smith*, 91 Conn. App. 133, 137, 880 A.2d 959, cert. denied, 276 Conn. 917, 888 A.2d 86 (2005); *State* v. *Beverly*, 72 Conn. App. 91, 104–105, 805 A.2d 95, cert. denied, 262 Conn. 910, 810 A.2d 275 (2002).

### III

We turn finally to the defendant's claim that, on several occasions during the prosecutor's closing arguments, he made improper statements that implicated the defendant's right to due process and deprived the

[5] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

defendant of his right to a fair trial. The eight prosecutorial statements of which the defendant complains fall into two classes: personal comments about the evidence before the jury and observations about the legal significance of intoxication. We are not persuaded that any of these statements impaired the defendant's constitutional rights.

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 361, 897 A.2d 569 (2006).

## A

The defendant claims that the prosecutor improperly expressed his personal opinion repeatedly during closing and rebuttal arguments. Specifically, the defendant claims that on seven occasions, the prosecutor improperly used the word "I" in the phrases "I think," "I don't think," "I don't believe" and "I agree." The defendant also claims that the prosecutor improperly stated: "The evidence in this case is overwhelming." We disagree that these statements were instances of prosecutorial impropriety.

Our Supreme Court has stated: "Although prosecutors generally should try to avoid using phrases that begin with the pronoun 'I,' such as 'I think' or 'I believe,' we recognize that the 'use of the word "I" is part of our everyday parlance and . . . because of established speech patterns, it cannot always easily be eliminated completely from extemporaneous elocution.' . . . Therefore, if it is clear that the prosecutor is arguing from the evidence presented at trial, instead of giving improper unsworn testimony with the suggestion of

secret knowledge, his or her occasional use of the first person does not constitute misconduct." (Citations omitted.) *State* v. *Luster*, supra, 279 Conn. 436.

In this case, in each instance when the prosecutor used the word "I," it is evident that he was encouraging the jury to draw reasonable inferences from the evidence and was not suggesting that he possessed secret knowledge. Therefore, the prosecutor did not improperly express his personal opinion when he made these comments during closing and rebuttal arguments.

As for the prosecutor's statement that "[t]he evidence in this case is overwhelming," its context shows that the prosecutor was commenting on the strength of the evidence, rather than expressing his personal belief as to the defendant's guilt. The statement, then, is indistinguishable from that challenged in *State* v. *Moody*, 77 Conn. App. 197, 217, 822 A.2d 990, cert. denied, 264 Conn. 918, 827 A.2d 707, cert. denied, 540 U.S. 1058, 124 S. Ct. 831, 157 L. Ed. 2d 714 (2003), wherein we stated: "Because the prosecutor specifically was addressing the strength of the evidence presented at trial, there was no danger that the jury would infer that his comments were based on his personal knowledge of matters not in evidence." We conclude, therefore, that the prosecutor's remark was not improper.

B

The defendant also claims that improprieties occurred when, in arguments to the jury, the prosecutor injected his personal observations about the legal significance of intoxication. Specifically, the defendant references two remarks. During closing argument, the prosecutor stated: "[I]ntoxication is not a defense; it never has been, and it never will be." During rebuttal, the prosecutor stated: "[I]ntoxication is not a defense to a crime; never has been, never will be. If that were the case, people would have license to do anything just

because all they would need to do is say, 'I drank too much and I couldn't intend what happened.' . . . Things that you would not do if you were sober, you would do if you were drunk. I wish I had a nickel for every time I woke up after drinking more than I should have and said, 'why the hell did I do that?' Well, the answer is pretty simple. It probably seemed like a good idea at the time. It doesn't mean that I didn't have the intent to do it; it simply means that because I drank alcohol, my judgment was impaired and I did it anyway, despite my better instinct. That is probably what happened in this case." We agree with the defendant that these comments amounted to prosecutorial impropriety, but we do not agree that they deprived the defendant of his due process right to a fair trial.

With respect to the "never has been, never will be" comments, the state admits in its brief that the prosecutor exaggerated the history and future viability of intoxication as a defense but argues that "given the leeway afforded counsel in the heat of argument and the prosecutor's right to argue the state's case forcefully, the prosecutor's comments were a proper argument as to the relevance of intoxication as a defense . . . ." We disagree. Although "some leeway must be afforded to the advocates in offering arguments to the jury"; (internal quotation marks omitted) *State* v. *Necaise*, 97 Conn. App. 214, 229, 904 A.2d 245, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006); we have never held that this principle permits a prosecutor to misstate the law.[6]

We equally are persuaded that it was improper for the prosecutor to discuss his own personal experiences with alcohol with the jury. Indeed, in its brief, the state

[6] "Voluntary intoxication is a defense in a criminal action only where proof of specific intent is required as an element of the crime charged." *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963), superseded by General Statutes § 53a-7, as stated in *State* v. *Brelsford*, 6 Conn. App. 701, 704, 507 A.2d 491 (1986).

acknowledges that these remarks are "closer to the line." We disagree that we should overlook them as a mere "rhetorical device to appeal to the everyday life experiences and common sense of the jurors," as the state contends. It is improper for a prosecutor to make light of intoxication with an expression such as, "I wish I had a nickel for every time I woke up after drinking more than I should have and said, 'why the hell did I do that?'" Even more worrisome, these remarks improperly were designed to invite the jury to view the defendant's conduct through the lens of the prosecutor's own experience with intoxication. As such, these comments exemplify prosecutorial impropriety.

Having determined that the prosecutor's remarks crossed the line of impropriety, we must decide whether these improper remarks deprived the defendant of his due process right to a fair trial. We conclude that they did not.

The following principles govern a due process claim grounded in prosecutorial impropriety. "In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). "Regardless of whether the defendant has objected to an incident of [impropriety], a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the [impropriety] is viewed in light of

the entire trial." *State* v. *Stevenson*, 269 Conn. 563, 573, 849 A.2d 626 (2004). "The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) Id., 571.

Applying the factors set out in *State* v. *Williams*, supra, 204 Conn. 540, we conclude that the prosecutor's observations, although improper, did not deprive the defendant of a fair trial. In part, the prosecutor's remarks denigrating the propriety of a defense of intoxication were invited by the defendant, who, having admitted that he started the fire, claimed that, because of his intoxication, he had not intended to do so. Moreover, defense counsel's own closing argument repeatedly emphasized the defendant's intoxication and concluded with the remark, "in this case, the issue of intent is far more important than who done it." Additionally, defense counsel failed at trial to object to the remarks that appellate counsel now claims to have been highly prejudicial. See *State* v. *Stevenson*, supra, 269 Conn. 576 ("counsel's failure to object at trial, while not by itself *fatal* to a defendant's claim [of prosecutorial impropriety], frequently will indicate on appellate review that the challenged comments do not rise to the magnitude of constitutional error" [emphasis in original; internal quotation marks omitted]).

Finally, in its charge to the jury, the trial court clarified the law as it pertains to intoxication and intent. The defendant has not challenged the propriety of these instructions in his appeal to this court.

In light of these factors, we conclude that the defendant was not deprived of his constitutional right to a fair trial. Although we do not condone the prosecutor's remarks, the record as a whole supports the propriety of the defendant's conviction.

Although we affirm the defendant's conviction of burglary and larceny, we must reverse his conviction of criminal mischief and arson. Because those charges were the predicate crimes on which the court based its determination that the defendant is a persistent serious felony offender and a persistent felony offender, we must reverse the conviction as to those charges as well.

The judgment is reversed as to the defendant's conviction of criminal mischief in the first degree and arson in the third degree and as to his conviction of being a persistent serious felony offender and a persistent felony offender, and the case is remanded for a new trial on those charges. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.