STATE OF CONNECTICUT *v.* VINCENT
V. CORNELIUS
(AC 29662)

Flynn, C. J., and Harper and West, Js.

Argued January 5—officially released March 30, 2010

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey M. Haupt*, assistant state's attorney, for the appellee (state).

### Opinion

FLYNN, C. J. The defendant, Vincent V. Cornelius, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1) and carrying a pistol without a permit in violation of General Statutes § 29-35. On appeal, the defendant claims that the court failed to remain impartial and burdened his right to testify in his defense when it gave an improper jury instruction on consciousness of guilt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 26, 2006, Kendraya Glasper and Kenia Cates went to the defendant's house in New Haven in Glasper's Saturn automobile. Cates and the defendant were dating at the time. The defendant's friend, James Pearson, came from the defendant's house to talk to Glasper and Cates, who remained in the Saturn. After a while, the defendant came from the house with his

small son and his son's mother, Tonia Sherman. He wanted Glasper to see his son, and, after getting out of the vehicle, she held him for a short while, expressing to the defendant that she thought the child was cute. The defendant then walked Sherman and their son to Sherman's vehicle, and she and the child left. Glasper and Cates went back inside the Saturn.

The defendant's mother, Veronica Crowder, then yelled from the upstairs window of the defendant's house for the defendant to say hello to Cates for her, and Cates exited the Saturn to speak with her, and the defendant's mother indicated to Cates that she was coming downstairs. When the defendant's mother came outside, she hugged Cates and then told her that she was going to go back inside the house to put on some shoes. At about that same time, the defendant was standing near the driver's side window of the Saturn speaking with Glasper as she sat in the driver's seat. Pearson was behind the Saturn, and, as he looked over toward the defendant, he saw that the defendant had a revolver in his right hand. This was the same gun that Pearson had seen the defendant with earlier in the day. Shortly thereafter, Pearson heard two gunshots. The defendant immediately and repeatedly cried out to others to telephone 911. The defendant opened the car door and applied pressure to Glasper's chest, telling her that help was on the way. Cates and Pearson ran over to the Saturn, and the defendant told Pearson to get rid of the gun, which was lying in the street. Pearson grabbed the gun, threw it into some bushes in the defendant's backyard and went into the defendant's house.

When police and emergency workers arrived, the defendant told the police that two black males had shot Glasper. He initially relayed this story to Officer Walter Flegler, and he later relayed it to Detective Donald Harrison. Approximately one hour after the defendant went to the police station to be interviewed, he was

told that Glasper had died, and he then admitted to Harrison that he had shot her. The defendant explained to Harrison that he had removed the gun from his waistband in order to pull up his pants and that he saw his mother and tried to put the gun in Glasper's car but that it must have hit the window because it discharged accidentally.

The defendant was arrested and charged with murder in violation of General Statutes § 53a-54a (a) and carrying a pistol without a permit in violation of § 29-35. After a jury trial, he was convicted of carrying a pistol without a permit and of the lesser included offense of manslaughter in the second degree in violation of § 53a-56 (a) (1), and he was sentenced to a total effective term of fourteen years imprisonment. This appeal followed.

The defendant claims that the court failed to remain impartial when it gave a jury instruction "indicating that the state believed [the] defendant had lied in his testimony [and that this] violated his constitutional rights."[1] The defendant argues that this instruction "misled the jurors into rejecting [the] defendant's defense that the shooting was accidental [because the] instructions singled out [the] defendant's testimony as being false." The defendant best sums up this unpreserved claim as follows: "[The] defendant does not complain about the consciousness of guilt instruction itself and does not claim it was improper to instruct the jury to consider [the] defendant's testimony as evidence of

---

[1] The defendant did not except to this charge. He did take an exception, however, to the court's failure to give his requested instruction on consciousness of innocence. The court's failure to give the requested instruction is not challenged on appeal, but we do note, nevertheless, that a defendant has no right to a consciousness of innocence instruction. See *State* v. *Holley*, 90 Conn. App. 350, 364–66, 877 A.2d 872, cert. denied, 275 Conn. 929, 883 A.2d 1249 (2005); *State* v. *Jennings*, 19 Conn. App. 265, 271–73, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989); *State* v. *Timmons*, 7 Conn. App. 457, 464, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987).

consciousness of guilt. Rather, [the] defendant claims that the court's statement highlighting the state's claim that [the] defendant's testimony was false violated his right to an impartial judge and jury and burdened his right to testify in his own defense. As such, this claim is of constitutional magnitude and can be reviewed under the [doctrine of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. See *State* v. *Hernandez,* 218 Conn. 458, 463, 590 A.2d 112 (1991) (defendant has due process right to fair trial before impartial judge and unprejudiced jury in atmosphere of judicial calm) . . . ." (Citations omitted.) We agree that the claim is of constitutional magnitude but conclude that a clear constitutional violation does not exist; therefore, the claim fails under *Golding's* third prong. See *State* v. *Golding,* supra, 239–40.

Initially, we address the reviewability of the defendant's claim. "[I]f a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding,* [supra, 213 Conn. 239–40]. . . . A party is obligated . . . affirmatively to request review under these doctrines. . . . Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citations omitted; internal

quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 324–25, 977 A.2d 209 (2009).

In this case, the record is adequate for our review of the defendant's claim, and we are persuaded that a question of constitutional magnitude has been raised, implicating the court's neutrality and the defendant's right to testify in his defense. Accordingly, the claim is reviewable. We further conclude, however, that the defendant has failed to demonstrate the existence of a constitutional violation that clearly deprived him of a fair trial.

The defendant claims that the court's statement in its jury instructions that "the state claims that the defendant made false statements to you during his testimony here in court" highlighted the state's contention that the defendant falsely had testified in court and that the court, therefore, violated his constitutional due process right to be tried by an impartial judge and unduly burdened his right to testify in his defense by singling out his testimony after he had taken the witness stand in his defense. We do not agree with either contention.

"[A] court must take care to avoid making improper remarks which are indicative of favor or condemnation . . . and must not indulge in an argumentative rehearsal of the claims of one side only. . . . Such proscriptions are of heightened importance in a criminal case, where considerations of due process require that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . . The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the state's accusations. . . . [P]artisan commentary, if fairly established by the record . . . deprives defendants of the very essence of their constitutional right to a fair trial by an impartial jury." (Citations omitted; internal

quotation marks omitted.) *State* v. *Hernandez*, supra, 218 Conn. 463.

The court's instructions to the jury on consciousness of guilt were as follows; the portion italicized is the only portion that the defendant claims was improper: "Consciousness of guilt. Let me give you a charge on that rule of law. When a person is on trial for criminal offenses, it is proper to show his conduct as well as any declarations made by him subsequent to the alleged criminal offenses which may fairly have an influence by that act. As the rule applies to this case, the law recognizes that an accused's statements to police or [his] efforts to conceal or dispose of evidence which a jury can reasonably conclude were made in an attempt to avoid detection of a crime or responsibility for a crime may be admissible against an accused as evidence reflecting that he was conscious of his own guilt. Whatever you find proven in this regard, if anything, must have been influenced by the criminal act and not by any other reason consistent with innocence. The state has presented evidence that after the shooting, the defendant initially told several officers that other black males were responsible for the shooting. The state claims that such statements were intentionally false; that is, knowingly untrue. You've heard the defendant's testimony in this regard. It is, of course, for you alone to determine the credibility of all the witnesses on this point. In the same way, the state offered evidence that after the shooting the defendant gave his gun to James Pearson and told him to get rid of it. Again, it is for you . . . alone to determine the credibility of all the witnesses on this issue. From any proven false statement or effort to dispose of evidence, you may, but are not required to, use what has been proven as evidence tending to show that the defendant was conscious of his own guilt.

"First, however, you must determine whether the state has proven any of such false statement or concealment. If so, and if you then find proven that the defendant did so in connection with these crimes, this does not raise a presumption of guilt. It is circumstantial evidence, and you may or may not infer consciousness of guilt from it. It is to be given the weight, if any, to which you think it is entitled to under the circumstances. It is up to you, as judges of the facts, to decide whether the state has proven any false statement or effort to conceal and, if so, whether or not whatever has been proven reflects a consciousness of guilt by the defendant and to consider such in your deliberations in conformity with these instructions.

"Finally, in accordance with and as limited by the same rule I've just given you, *the state claims that the defendant made false statements to you during his testimony here in court.* This is only a claim by the state. It is for you to determine, based upon all of the evidence, what the truth is. If you conclude, however, that the defendant made any false statements to you here in court concerning the crimes charged and that he did so intentionally, you may conclude that the defendant's actions show a consciousness of guilt in accordance with these instructions. In other words, from any statements made by the defendant here in court which are shown to be false, you may infer guilty knowledge influenced by the criminal act itself. Again, you are permitted but not required to conclude that such statements may be circumstantial evidence of consciousness of guilt. They are to be given the weight, if any, to which you think they are entitled to under the circumstances in conformity with these instructions." (Emphasis added.)

Within the entire charge, the defendant complains only of the statement *"the state claims that the defendant made false statements to you during his testimony here in court."* (Emphasis added.) A review of

the state's closing argument reveals that the prosecutor argued, in part, that the evidence did not support the defendant's trial testimony. Although we do not necessarily endorse the specific language used by the court in the italicized portion of the charge of which the defendant complains, we do not view it in isolation. It is clear that the court immediately thereafter instructed the jurors that it was up to them to decide whether the defendant gave false statements or testimony, and, if they decided that he did give false statements or testimony, that it solely was within their province to use such testimony as evidence of consciousness of guilt, if they so desired. Clearly, the instruction, when taken as a whole, left fact-finding to the jury, was neutral and did not demonstrate any partiality on the part of the court. See *State* v. *Casanova*, 255 Conn. 581, 600, 767 A.2d 1189 (2001) (charge, read as whole, must be neutral in substance and appropriately guide jury to its verdict).

The defendant also argues that the contested portion of the court's instruction "singled out" his trial testimony, thereby burdening his right to testify on his behalf. The defendant points to *State* v. *Hernandez*, supra, 218 Conn. 461–63, arguing that the court must avoid improper comments and that the court in this case "unfairly singled out his testimony as being false," causing the jury to be influenced, which resulted in an injustice. We are not persuaded.

In *Hernandez*, our Supreme Court reversed the defendant's conviction because the trial court, in marshaling evidence, had "*extensively detailed* the state's claims and its evidence in support thereof, and little or no reference was made to the defendant's exculpatory evidence and his theory of defense . . . ." (Emphasis added.) *State* v. *Hernandez*, supra, 218 Conn. 465. There is no contention that the trial court in this case marshaled the evidence or *extensively detailed* the state's claims; there was but one sentence in an otherwise

uncontested charge that summarized a reason why the consciousness of guilt charge was being given. We simply find no similarity between the cases.

The defendant also points to *State* v. *Coleman*, 14 Conn. App. 657, 676, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988), and argues that "just as in *Coleman*, the court's instruction singled out [the] defendant's testimony as possibly being false and 'imposed an arbitrary and disproportionate cost' on his assertion of his right to testify." We do not agree.

In *Coleman*, this court found that the trial court's instruction that the jury "may properly base its finding of guilt in part on the defendant's testimony and [its] disbelief in its truth"; id., 674; improperly burdened the defendant's right to testify because it allowed the jury to infer from its mere disbelief of the defendant's testimony that the facts denied were true. Id. The court in *Coleman* also cautioned, however, that its conclusion did not mean "that a trial court may not appropriately instruct the jury regarding the link between a determination that a defendant has testified falsely and consciousness of guilt on his part. Just as the jury may consider a defendant's lies to the police as consciousness of guilt . . . it may under appropriate circumstances also consider a defendant's false testimony at trial as consciousness of guilt. . . . The jury's determination that a defendant's conduct evinces a consciousness of guilt is not the same, however, as a direct inferential step from a disbelief in his testimony to proof of facts on which the state has the burden of persuasion." (Citations omitted.) Id., 676–77. In the present case, the court did not tell the jury that it could base a finding of guilt on its disbelief of the defendant's testimony. To the contrary, the court properly instructed the jury that it was to determine, "based upon all of the evidence," whether the defendant had made false statements and given false testimony, and, that after so determining, it

could consider the defendant's false statements and testimony as evidence of consciousness of guilt. We conclude that the court's instruction was not improper.

The judgment is affirmed.

In this opinion WEST, J., concurred.

HARPER, J., concurring. I concur with the result reached by the majority but respectfully disagree with its analysis of the claim by the defendant, Vincent V. Cornelius. I disagree that the claim is reviewable under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

The majority opinion accurately states that the defendant, in his principal brief, affirmatively requests review of his unpreserved claim under the *Golding* doctrine. Also, the majority opinion accurately states that, invoking such level of review, the defendant couches his claim in constitutional terms. The defendant does not challenge the propriety of delivering a consciousness of guilt instruction in this case or argue that the court's consciousness of guilt instruction was inaccurate as a statement of the law. The defendant takes issue with the fact that the court, in the context of its consciousness of guilt instruction, drew the jury's attention to the state's argument that the defendant had testified untruthfully. The defendant argues that the court thereby improperly highlighted the state's argument that his testimony was false, thus burdening "his right to an impartial judge and jury" and "his right to testify in his own defense."

A claim is not reviewable under *Golding* unless it "is of constitutional magnitude alleging the violation of a fundamental right . . . ." *State* v. *Golding,* supra, 213 Conn. 239–40; see also *State* v. *Moore,* 293 Conn. 781, 805, 981 A.2d 1030 (2009) ("[t]he first two [prongs of *Golding*] involve a determination of whether the claim

is reviewable; the second two . . . involve a determination of whether the defendant may prevail" [internal quotation marks omitted]). In determining whether a claim is reviewable under *Golding*, this court is not bound by an appellant's representation that his claim is constitutional in nature; we must independently determine the true nature of the claim. See *State* v. *Samuels*, 273 Conn. 541, 560, 871 A.2d 1005 (2005) ("[m]erely placing a constitutional tag on a nonconstitutional claim does not make it so" [internal quotation marks omitted]); *State* v. *Schiappa*, 248 Conn. 132, 164, 728 A.2d 466 ("a nonconstitutional claim cannot be transformed into a constitutional claim simply by virtue of the label placed upon it by a party"), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999); *State* v. *Taylor*, 239 Conn. 481, 502–503, 687 A.2d 489 (1996) ("it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party" [internal quotation marks omitted]), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

"Although our Supreme Court clearly has recognized that some errors in jury instructions are of constitutional magnitude, it has limited *Golding* review to instructional errors that so adversely prejudice the defendant that he is effectively deprived of his right to a trial by jury." *State* v. *Carty*, 100 Conn. App. 40, 58, 916 A.2d 852, cert. denied, 282 Conn. 917, 925 A.2d 1100 (2007). Our Supreme Court "repeatedly has held that consciousness of guilt claims [that do not mandate inferences to be drawn from the evidence] are not constitutional and, therefore, are not subject to *Golding* review." *State* v. *Luster*, 279 Conn. 414, 421–22, 902 A.2d 636 (2006); see also *State* v. *Johnson*, 288 Conn. 236, 288, 951 A.2d 1257 (2008); *State* v. *Schmidt*, 92 Conn. App. 665, 677, 886 A.2d 854 (2005), cert. denied, 277 Conn. 908, 894 A.2d 989 (2006); *State* v. *Beverly*,

72 Conn. App. 91, 104, 805 A.2d 95, cert. denied, 262 Conn. 910, 810 A.2d 275 (2002); *State* v. *Turner,* 67 Conn. App. 519, 526–27, 787 A.2d 625 (2002); *State* v. *Rodriguez,* 61 Conn. App. 700, 712–13, 767 A.2d 756 (2001); *State* v. *Ham,* 55 Conn. App. 281, 292–93, 739 A.2d 1268, cert. denied, 252 Conn. 916, 743 A.2d 1128 (1999). With regard to consciousness of guilt instructions, our Supreme Court has recognized that "unpreserved challenges to jury instructions that *mandate* inferences adverse to a defendant may sufficiently implicate constitutional rights to satisfy the second condition of *Golding.* . . . By contrast, instructions addressing *permissive* inferences are not of constitutional magnitude." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Alston,* 272 Conn. 432, 448, 862 A.2d 817 (2005).

The instruction at issue in the present case did not mandate that the jury draw a particular inference from the evidence presented at trial but merely identified a permissive inference that the jury might draw from the defendant's testimony. In conformity with the precedent set forth previously, I conclude that that claim fails under *Golding*'s second prong. Additionally, with regard to the issue of *Golding* review, I rely on our Supreme Court's analysis in *State* v. *Coward,* 292 Conn. 296, 313–15, 972 A.2d 691 (2009), which is consistent with the precedent set forth previously. In *Coward,* the defendant, for the first time on appeal, challenged the trial court's consciousness of guilt instruction that it was permissible for the jury to infer that the events described by a certain witness, Maurice Lawrence, constituted consciousness of guilt. Id., 314. The defendant, seeking *Golding* review, placed a constitutional tag on his claim; he asserted that the court "improperly put the court's imprimatur on the state's version of events, and thereby bolstered the state's case by supporting Lawrence's uncorroborated testimony and suggesting

that the inference of guilt to be drawn from that testimony is, at least, favored by the law." Id. Our Supreme Court in *Coward* declined to afford *Golding* review to the defendant's claim because it was not truly constitutional in nature. Id., 315. The court emphasized that it "repeatedly has held that consciousness of guilt claims, including claims involving [instructional error], are not constitutional and, therefore, are not subject to *Golding* review." (Internal quotation marks omitted.) Id., 314–15.

In light of my resolution of the *Golding* issue, I would address the defendant's affirmative request, made in the alternative, to review the claim for plain error. See Practice Book § 60-5 ("[t]he court may in the interests of justice notice plain error not brought to the attention of the trial court"). "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Jackson*, 73 Conn. App. 338, 386, 808 A.2d 388, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002).

The defendant has isolated one sentence within the court's consciousness of guilt instruction. The defendant asserts that the court's single reference to an argument made by the state warrants a new trial. The defendant does not claim that the court engaged in one-sided commentary in favor of the state's case during the course of its entire charge. Additionally, the record plainly reflects that the court's reference to the state's argument was both relevant to the consciousness of

guilt instruction and entirely neutral. Following its reference to the state's argument, the court immediately stated that "[it was] only a claim by the state." My careful examination of the defendant's brief and the record leads me to conclude that the claimed error is not so egregious or obvious that it warrants review under the plain error doctrine. See *State* v. *Houle*, 105 Conn. App. 813, 821, 940 A.2d 836 (2008); *State* v. *Beverly*, supra, 72 Conn. App. 104–105; *State* v. *Tyson*, 43 Conn. App. 61, 66, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996).

For the foregoing reasons, I concur with the majority's conclusion that the judgment of the trial court should be affirmed.