******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BANK OF AMERICA, N.A. *v.* DEBORA M. THOMAS
(AC 35850)
(AC 35851)

DiPentima, C. J., and Alvord and Mintz, Js.

*Argued April 8—officially released July 29, 2014*

(Appeal from Superior Court, judicial district of Middlesex, Domnarski, J. [foreclosure judgment]; Aurigemma, J. [motions to open].)

*Daniel Thomas*, for the appellant (defendant).

*Elizabeth T. Timkovich*, with whom, on the brief, was *Pierre-Yves Kolakowski*, for the appellee (plaintiff).

*Opinion*

MINTZ, J. In this residential mortgage foreclosure action, the defendant, Debora M. Thomas, has filed consolidated appeals from the trial court's denial of two motions to open the judgment of strict foreclosure rendered in favor of the plaintiff, Bank of America, N.A.[1] The defendant claims that the court improperly denied the first motion to open because it reached its decision before hearing the parties' oral argument in violation of her right to due process, and because it refused to hear her claim, raised for the first time at oral argument, that the plaintiff had filed a fraudulent affidavit of debt as evidenced by a consent order between the plaintiff and the Office of the Comptroller of the Currency of the United States (comptroller). With respect to the second motion to open, the defendant claims that the court improperly failed to open the foreclosure judgment to allow her to present "new evidence regarding the fraudulent actions of the plaintiff in obtaining the initial [foreclosure] judgment." We disagree and, accordingly, affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of the claims raised by the defendant in her appeals. The plaintiff commenced the present action in July, 2007. In its complaint, the plaintiff alleged that the defendant had executed a note in the principal amount of $275,000, that she had secured the note by executing a mortgage on property located at 57 Fawn Hill Road in Killingworth, that the plaintiff was the current holder of the note and mortgage, and that the note was in default because of the defendant's failure to make requisite installment payments. The defendant did not file a response to the complaint. She was defaulted for failure to plead on August 8, 2007.

On August 13, 2007, the court rendered a judgment of foreclosure by sale. In accordance with the affidavit of debt and the appraisal report filed by the plaintiff, the court found that the total debt owed by the defendant was $276,220.26, and that the fair market value of the property was $455,000. The court later granted two postjudgment requests from the defendant to extend the sale date—the last to March 15, 2008—on the basis of the defendant's assurances that she intended to pay off the debt owed to the plaintiff. The defendant, however, never exercised her right of redemption.

On three subsequent occasions, the court opened the judgment to extend the sale date as a result of the defendant having filed for federal bankruptcy protection. On August 6, 2012, following the dismissal of a fourth bankruptcy action, the court modified the judgment from a judgment of foreclosure by sale to a judgment of strict foreclosure, setting law days to commence on September 10, 2012.

On September 5, 2012, the defendant filed her fifth

bankruptcy petition, which was dismissed with prejudice on November 5, 2012. On May 20, 2013, the court reset the law days to commence on June 24, 2013. At that time, the court found that the updated debt had risen to $455,539.41 and that the fair market value of the property had decreased to $370,000.

The defendant filed her first motion to open the foreclosure judgment on May 30, 2013. The defendant argued in her motion that she had "reached an accommodation with the plaintiff in regard to the default interest" accruing on the debt and that she wanted to enter into the Federal Home Affordable Modification Program, or, alternatively, to mediate a settlement with the plaintiff. The plaintiff filed an objection to the motion to open, in which it argued that the foreclosure action had been pending for more than six years, that the defendant had engaged in numerous dilatory procedural tactics, including filing multiple bankruptcy actions, that the defendant had had ample time and opportunities to raise any applicable defenses to the foreclosure complaint or to enter into negotiations with the plaintiff, and that it would be inequitable to the plaintiff to provide the defendant with yet another opportunity for delay.

The parties appeared on June 18, 2013, to argue the motion to open. When the court called the case for argument, counsel for the plaintiff asked the court to pass on the matter because he realized that he did not have the case file and needed to contact his office. The court agreed to pass the case, remarking to the parties that "given the age of the case, not likely it's going to be granted, but I'll let you argue."[2] The court later returned to the present action. In response to the court's question of why it should open the foreclosure judgment, the defendant indicated that she wanted to keep her home, that she had overcome serious financial troubles brought on by significant medical issues and ensuing bills, and that she now had sufficient income to pay down the debt owed on a monthly basis, provided that she could negotiate with the plaintiff regarding the high default interest accruing on the debt. She asked the court to open the judgment and to order the plaintiff to enter into negotiations with her. The court stated that it was not going to force the plaintiff to negotiate with the defendant, noting that, after six years of proceedings, the debt owed exceeded the value of the property by nearly $100,000, and that, thus far, the plaintiff had "been very understanding."

The defendant attempted to raise as an additional ground for opening the judgment that the plaintiff had perpetrated a fraud on the court by filing a fraudulent affidavit. In support of that argument, the defendant made reference to a consent order rendered in a regulatory action brought by the comptroller against the plaintiff. She also noted that she had received a $300 check

in connection with that consent order. The court refused to consider the consent order argument because it had not been raised by the defendant in her written motion to open. The court proceeded to deny the motion to open the foreclosure judgment and reset the law days to commence on July 9, 2013. The court denied a request by the plaintiff for an order barring the defendant from filing another motion to open in this matter.

The defendant filed a second motion to open on June 21, 2013. In the motion, the defendant claimed that the comptroller had determined that the plaintiff had filed fraudulent documentation in foreclosure actions, that the present action "was one of the actions included in the determination," that the plaintiff had committed fraud on the court by filing fraudulent documentation to initiate the present action, and that, because of such fraud, the court should open the judgment.[3] The motion did not specifically mention the comptroller's consent order or the $300 check received by the defendant, nor were copies of the consent order or the check appended to the motion to open. There were also no affidavits or any other exhibits attached to the motion to open. The motion contained no legal analysis, and was not accompanied by a memorandum of law.

The plaintiff filed an objection to the motion to open, arguing that unsubstantiated allegations of fraud were insufficient to support the opening of a judgment, and that the defendant had failed to plead any specific facts or to provide any evidence to support her assertion that a fraud had been committed in the present case. The plaintiff also reasserted its position that the defendant had employed numerous delay tactics throughout the foreclosure proceedings and that it would be inequitable to allow her a further opportunity for delay.

The court heard oral argument on the second motion to open on July 8, 2013. The defendant argued that by entering into the consent order with the comptroller, the plaintiff was acknowledging that it had engaged in fraudulent acts in foreclosure matters, including the filing of affidavits that were not made on the basis of personal knowledge and that were not acknowledged properly before a notary. The defendant further argued that, by its terms, the consent order covered all foreclosure actions involving the plaintiff that were pending between January 1, 2009 through December 31, 2010, and that the present action had been pending during that time period. The defendant continued, stating that the present case "was, in fact, part and parcel of that agreement because the defendant did receive a check of $300, acknowledging that her case was part of that." The plaintiff reiterated the arguments set forth in its written opposition.

The court agreed with the plaintiff that the defendant had failed to produce any evidence to support her asser-

tion of fraud. Although the court accepted, for the sake of argument, that the consent order was applicable to all foreclosure cases pending in 2009 through 2010, which would include the present action, the court noted that the affidavits filed by the plaintiff at the time the present action was initiated—the only affidavits challenged by the defendant—were filed in 2007, "well before anything talked about in the consent decree." The court also rejected the defendant's argument that the receipt of a $300 check established that anything fraudulent ever had been filed in the present case.[4] The court denied the motion to open. That same day, the defendant filed the present consolidated appeals.

Before turning to the defendant's claims on appeal, we first set forth the standard of review applicable to decisions on motions to open a judgment. "A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Alix* v. *Leech*, 45 Conn. App. 1, 4, 692 A.2d 1309 (1997).

I

The defendant raises two claims of error with respect to the court's denial of her first motion to open. First, she claims that the court violated her constitutional right to due process of law by denying the motion on the basis of a "preconceived decision" that the court formed prior to hearing the parties argue the merits of the motion. Second, the defendant claims that the court erred by not allowing her to present her fraud argument because she had failed to raise that issue in her written motion to open. We consider each claim in turn.

A

We first turn to the defendant's claim that the court abused its discretion and violated the defendant's due process rights by forming a decision on the motion to open prior to hearing argument. She argues that the "preconceived decision" is evinced by the court's statement, made prior to hearing argument, that "given the age of the case, not likely it's going to be granted, but I'll let you argue." We are not persuaded.

"It is fundamental that claims of error must be distinctly raised and decided in the trial court. As a result, Connecticut appellate courts will not address issues not decided by the trial court." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Iaquessa*, 132 Conn. App. 812, 814–15, 34 A.3d 1005 (2012); see also Practice Book § 60-5 (appellate courts not bound to

consider claims not distinctly raised before trial court). The requirement that a claim be distinctly raised at trial "means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being [challenged]. . . . As our Supreme Court has explained, [t]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Iaquessa*, supra, 814–15.

In the present matter, the defendant raised no claim of error before the trial court regarding its prehearing remark. The defendant did not object at the time the statement was made or in any way indicate to the court that she believed that the court had prejudged the matter. When the court recalled the motion after having first passed on it, the defendant did not ask the court to recuse itself or otherwise challenge the court's impartiality in hearing the motion to open. The defendant likewise filed no postjudgment motions for reconsideration raising the due process argument, nor did she mention the court's prehearing remark in her second motion to open. Because the defendant's claim of a due process violation was never brought to the attention of the trial court, and thus never was ruled on by the court, the defendant's claim is entirely unpreserved.

In *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), however, our Supreme Court held that an appellant could prevail on an unpreserved claim of constitutional error provided that "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) Id., 239–40. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 89–90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). In addition to *Golding*, the plain error doctrine, as codified in Practice Book § 60-5,[5] also may be invoked "to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 76–77, 60 A.3d 271 (2013).[6]

Here, the first two prongs of *Golding* are met. First, the record before us contains the full transcript of the hearing on the motion to open, which provides an adequate basis for reviewing the court's statement. Second, "[d]ue process demands . . . the existence of impartiality on the part of those who function in judicial or quasi-judicial capacities." *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 235, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986); see also *Withrow* v. *Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) (biased decision maker constitutionally unacceptable). The defendant's claim that the court had predetermined the outcome of the motion to open implicates the court's impartiality and, thus, raises a claim of constitutional magnitude. The defendant's claim nevertheless falters on the third prong of the *Golding* analysis because the defendant has failed to show that a constitutional violation that deprived the defendant of a fair hearing clearly existed.

We do not agree with the defendant that the court's remark that "given the age of the case, not likely it's going to be granted, but I'll let you argue," showed that the court had prejudged the motion to open and, thus, demonstrated the clear existence of a constitutional violation. The court did not unequivocally state at any point that it had decided not to grant the motion. Rather than conveying that the court had predetermined the outcome of the motion to open, as is suggested by the defendant, we read the court's comment as making a general observation about the relative strength of the motion, yet clearly indicating that it was keeping an open mind until it heard the parties' arguments. The court in fact heard oral argument on the motion, and the defendant has not cited to anything else in the record that would support her claim that the court failed to act impartially in considering the motion to open.

Because the defendant has failed to demonstrate that the constitutional violation she alleges clearly existed and clearly deprived her of a fair hearing, her claim is not entitled to prevail under the third prong of *Golding*. Further, on the basis of our review of the record, we are not persuaded that the defendant's claim is of "such monumental proportion" that it threatens either to erode our system of justice or to work a serious and manifest injustice on the defendant, and, thus, the claim does not qualify for plain error review.

B

We next turn to the defendant's claim that the court erred by not allowing her to present her argument that the consent order between the plaintiff and the comptroller demonstrated that fraudulent affidavits were used in the present case to obtain a foreclosure judgment. The court refused to hear the argument because she had failed to include it in her written motion to

open, raising it instead for the first time at oral argument before the trial court. We decline to review this claim because it is not adequately briefed.

As we have stated on numerous occasions, "[w]e do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . [A]ssignments of error [that] are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Verderame* v. *Trinity Estates Development Corp.*, 92 Conn. App. 230, 232, 883 A.2d 1255 (2005).

The defendant has not separately briefed her claim; she does nothing more than set forth the claim in her brief. There is no analysis of why the court's refusal to hear argument on a ground raised for the first time at oral argument before the trial court amounted to an abuse of discretion. Because the claim is not properly briefed, we deem it abandoned.

II

Finally, we turn to the defendant's claim that the court erred by not granting her second motion to open in which she sought an opportunity "to present new evidence regarding the fraudulent actions of the plaintiff in obtaining the initial judgment [of foreclosure]." On the basis of our review of the record, we are not persuaded that the court abused its discretion in declining to open the judgment of foreclosure.

As previously stated, our review of a court's decision to deny a motion to open is limited to whether the court abused its discretion; we do not render a de novo decision on the motion as the defendant suggests in her brief. "The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time." *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980). "When a party seeks to open and vacate a judgment based on new evidence allegedly showing the judgment is tainted by fraud, he must show, inter alia, that he was diligent during trial in trying to discover and expose the fraud, *and that there is clear proof of that fraud.*" (Emphasis added.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 107, 952 A.2d 1 (2008). In the present case, the defendant presented no clear proof to the trial court that a fraud had been committed with respect to the judgment she sought to open.

At the hearing on the motion, the defendant argued that the consent order between the plaintiff and the comptroller was proof that a fraud was committed in the present case. She admitted on the record, however,

that the consent order contained no list identifying in which foreclosure cases the plaintiff had filed fraudulent affidavits, which directly undermined her argument. She also failed to ensure that the consent order was made a part of the record before the trial court. Although she maintained that the original judgment of foreclosure was the product of a fraudulent affidavit, she provided the court with no additional factual details, such as identifying a particular affidavit or describing the nature of the alleged fraud. Although she explained to the court that she could not have raised the fraud issue earlier in the proceedings because she "was not aware of the plaintiff's activity in regard to its affidavits as described in the consent order until the defendant received the check for $300 on April 26, 2013," she failed to provide the court with a copy of the check for review. The court rejected the defendant's argument that the receipt of a check from federal regulators equated to evidence of fraud, which was not unreasonable in light of the fact that the defendant presented no evidence to the court regarding the circumstances surrounding the payment. In sum, the defendant was not able to substantiate her allegation of fraud beyond the realm of speculation and mere suspicion. See *Bruno* v. *Bruno*, 146 Conn. App. 214, 231, 76 A.3d 725 (2013) (probable cause of fraud, not mere suspicion, necessary to open judgment even for limited purpose of conducting discovery on fraud allegation).

Given the scant evidentiary record created by the defendant in support of her motion, and making every reasonable presumption in favor of sustaining the court's action, we conclude that the court reasonably could have concluded as it did.[7] Accordingly, we reject the defendant's claim that the court abused its discretion in denying the second motion to open.

The judgments are affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] For ease of reference, we will refer to the two motions to open at issue in this appeal as the first and second motion to open, although earlier motions to open were filed previously in this matter by both parties.

[2] The following colloquy occurred between the court and counsel at the June 18, 2013 hearing:

"The Court: And this is a motion to open judgment?

"[The Defendant's Counsel]: Yes. It is, Your Honor.

"The Court: And there's an objection?

"[The Plaintiff's Counsel]: Your Honor, I, actually, don't have that file with me. If we could pass this and I'll call my office and see what they—I haven't seen the motion. I'll go to the law library and read it.

"The Court: It's [a 2007] case and a judgment of sale entered in August of [2007]. Let's see. They filed bankruptcy in [2008], another bankruptcy, [chapter 13], in [2009]. That was dismissed. Motion to open and extend sale in [2009] and another [chapter 13] in 2010, which was also dismissed. Motion to open and extend the law day. Okay. Yeah. This isn't a short matter, sir. So, I'm going to pass this.

"[The Plaintiff's Counsel]: Okay, Your Honor.

"The Court: And you can—if you need more info than that, you can call your office. But you've objected and—

"[The Plaintiff's Counsel]: Okay, Your Honor.

"The Court: —given the age of the case, not likely it's going to be granted,

but I'll let you argue."

[3] In addition to the motion to open, the defendant filed a motion to dismiss the foreclosure action that was nearly identical to the motion to open except for the title and the relief requested. The court never acted on the motion to dismiss.

[4] Our review of the trial court record indicates that, in addition to not attaching to the second motion to open copies of either the comptroller's consent order or the check, the defendant did not attempt to have those documents entered as exhibits during the hearing on the motion. Although counsel for the defendant indicated at the hearing that he had copies available, copies were never filed with the court or otherwise made a part of the record. The following colloquies are illustrative:

"[The Defendant's Counsel]: The basis of the motion to reopen, Your Honor, is the consent agreement between the [plaintiff] and United States of America, Department of Treasury, Comptroller of the Currency. In that agreement, Your Honor, the [plaintiff]—

"The Court: Have you attached a copy?

"[The Defendant's Counsel]: I have a copy right here, Your Honor, if you'd like it.

"[The Plaintiff's Counsel]: Your Honor, we've also filed a written objection as to it.

"[The Defendant's Counsel]: I can reach that objection, Your Honor. I do have a copy of the consent, Your Honor.

"The Court: Okay. Have you filed it?

"[The Defendant's Counsel]: No. I have not.

"The Court: Okay. Go ahead.

"[The Defendant's Counsel]: Would you like me to give it to Your Honor?

"The Court: No.

* * *

"The Court: The receipt of the check does not establish that anything was fraudulent, sir.

"[The Defendant's Counsel]: Well, then, why'd they send the check?

"The Court: I don't know, and there's no check here. There's no evidence of anything. It's just your word.

"[The Defendant's Counsel]: I have a copy of the check, Your Honor."

Although copies of the consent order and the check were included in the appendix of the appellant's brief, those documents were not reviewed by the trial court in denying the second motion to open, and they are not part of the trial court record; accordingly, we do not rely on the contents of those documents in reviewing the court's decision. See *State* v. *Evans*, 9 Conn. App. 349, 354, 519 A.2d 73 (1986) ("[i]n deciding a case, this court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, or to documents or exhibits which are not part of the record").

[5] Practice Book § 60-5 provides in relevant part: "The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[6] The plaintiff argues in its brief that we should decline to review the defendant's constitutional claim because it is unpreserved, and she has failed to request in her principal brief that this court review her claim either pursuant to the doctrine set forth in *State* v. *Golding*, supra, 213 Conn. 239–40, or the plain error doctrine. After the briefs in this case were filed, our Supreme Court overturned existing case law holding that *Golding* review of unpreserved claims of constitutional error is unavailable unless "affirmatively requested" by a party in its main brief. See *State* v. *Elson*, 311 Conn. 726, 742,    A.3d    (2014). The court in *Elson* held that "to obtain review of an unpreserved claim pursuant to *State* v. *Golding*, supra, [239–40, the party seeking such review] need only raise that claim in his main brief, wherein he must present a record that is [adequate] for review and affirmatively [demonstrate] that his claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Elson*, supra, 754–55. It is important to note that the Supreme Court's decision in *Elson* did not eliminate the important requirement that all claims of error be adequately briefed on the merits. The court stated: "If the [party's] brief fails to identify the relevant record sections, identify the governing constitutional principles, or apply law to fact in demonstrating the existence of a constitutional violation requiring reversal, then the claim likely will be deemed inadequately briefed and will fail on that ground anyway, regardless of some threshold invocation of *Golding* review prior to the briefing of the merits." Id., 750.

Here, it is a close call whether the defendant adequately has briefed the merits of her unpreserved due process claim. It is axiomatic that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Bohonnon Law Firm, LLC* v. *Baxter*, 131 Conn. App. 371, 383, 27 A.3d 384, cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011). In her brief, the defendant does little more than state her belief that the court's preargument statement was improper and showed partiality on the part of the judge. She cites to *State* v. *Cornelius*, 120 Conn. App. 177, 990 A.2d 927, cert. denied, 296 Conn. 910, 993 A.2d 467 (2010), for the general proposition that a court should "take care to avoid making improper remarks which are indicative of favor or condemnation" and that "due process require[s] . . . an impartial judge." (Internal quotation marks omitted.) Id., 182. She does not, however, include any due process analysis or indicate whether her claim concerns procedural due process, substantive due process or both. See *Bohonnon Law Firm, LLC* v. *Baxter*, supra, 383. By failing to identify fully the governing constitutional principles at issue and failing to apply that law to the facts in a meaningful manner so as to demonstrate the existence of a constitutional violation requiring reversal, the defendant comes dangerously close to having abandoned her claim. We nevertheless endeavor to engage in *Golding* review of the defendant's claim.

[7] We feel compelled to note that we take seriously all allegations of fraud and misdeeds in the prosecution of residential mortgage foreclosure actions before the courts of this state. Some evidence suggesting actual wrongdoing, however, and not merely the specter of such, is necessary in order to set aside a final adjudication.